**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO**

**WESTERN DIVISION**

AKIL CHILDRESS

3704 Cass Avenue

Cincinnati, Ohio

And,

EMMA SUE LONG

2445 L. Don Dotson Apt. 2019

Bedford, Texas 76021

And

CHARLENE BERKHALTER

c/o George A. Katchmer

1886 Brock Road N. E.

Bloomingburg, Ohio 43106

And,

SANDRA  ALLEN

c/o George A. Katchmer

1886 Brock Road N. E.

Bloomingburg, Ohio 43106

And

JAMES MCCRARY

3676 Vine Street

Cincinnati, Ohio 45229

VANESSA SPARKS                                      Case No.

1623 Dalton Street #14939

1

Cincinnati. Ohio 45250

And

STANFORD POOLE.

5701 Luhn Avenue

Cincinnati, Ohio 45277

And

 DENISE HILL

2455 Paris Street

Cincinnati, Ohio 45219

And

RODNEY THOMPSON

c/o George A. Katchmer

1886 Brock Road N. E.

Bloomingburg, Ohio 43106


Plaintiffs


v.

**CITY OF CINCINNATI, OHIO**

Law Department

801 Plum Street

Cincinnati, Ohio 45202

**JAN- MICHELE LEMON KEARNEY,** Vice Mayor
City of Cincinnati, Ohio
801 Plum Street, Ste. 308
Cincinnati, Ohio 45202,
(Sued in his official and individual capacities)

**VICTORIA PARKS**, President Pro Tem
 City of Cincinnati, Ohio
801 Plum Street, Ste. 308
Cincinnati, Ohio 45202,
(Sued in her official and individual capacities)

**JEFF CRAMERDING,** Council Member
City of Cincinnati, Ohio
801 Plum Street, Ste. 308
Cincinnati, Ohio 45202,
(Sued in his official and individual capacities)

**REGGIE HARRIS,** Council Member
City of Cincinnati, Ohio
801 Plum Street, Ste. 308
Cincinnati, Ohio 45202,
(Sued in his official and individual capacities)

**MARK JEFFREYS,** Counsel Member
City of Cincinnati, Ohio
801 Plum Street, Ste. 308
Cincinnati, Ohio 45202,
(Sued in his official and individual capacities)

**SCOTTY JOHNSON,** Council Member
City of Cincinnati, Ohio
801 Plum Street, Ste. 308
Cincinnati, Ohio 45202,
(Sued in his official and individual capacities)

**LIZ KEATING,** Council Member
City of Cincinnati, Ohio
801 Plum Street, Ste. 308
Cincinnati, Ohio 45202,
(Sued in her official and individual capacities)

**MEEKA OWENS**, Council Member
City of Cincinnati, Ohio

3

801 Plum Street, Ste. 308
Cincinnati, Ohio 45202,
(Sued in her official and individual capacities)

**SETH WALSH**, Council Member
City of Cincinnati, Ohio
801 Plum Street, Ste. 308
Cincinnati, Ohio 45202,
(Sued in his official and individual capacities)

**PORT OF GREATER CINCINNATI DEVELOPMENT  AUTHORITY**
3 East Fourth Street
Cincinnati, Ohio 45202

**LAURA N. BRUNNER**
President and CEO
PORT OF GREATER CINCINNATI DEVELOPMENT  AUTHORITY
3 East Fourth Street
Cincinnati, Ohio 45202
(Sued in her official and individual capacities)

**PHILIP DENNING**
**Executive Vice** President
PORT OF GREATER CINCINNATI DEVELOPMENT  AUTHORITY
3 East Fourth Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

**RICK HUDSON**
Chief Financial Officer
PORT OF GREATER CINCINNATI DEVELOPMENT  AUTHORITY
3 East Fourth Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

**TODD CASTELLINI**
Senior Vice President of Public Finance and Industrial Development
PORT OF GREATER CINCINNATI DEVELOPMENT  AUTHORITY
3 East Fourth Street

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

**JILSON DANIELS**
Vice President of Economic Equity
PORT OF GREATER CINCINNATI DEVELOPMENT  AUTHORITY
3 East Fourth Street
Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

**WILLIAM FISCHER**
Vice President of Community Development
PORT OF GREATER CINCINNATI DEVELOPMENT  AUTHORITY
3 East Fourth Street
Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

**RAHIEL MICHAEL**
Vice President of  Government and Community Affairs
PORT OF GREATER CINCINNATI DEVELOPMENT  AUTHORITY
3 East Fourth Street
Cincinnati, Ohio 45202

(Sued in her official and individual capacities)

**DIRECTOR ART DAHLBERG**

Buildings &Inspections Department

c/o Clerk of Council

801 Plum Street

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)


**ED CUNNINGHAM**

Buildings & Inspections Department c/o Clerk of Council

801 Plum Street

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)


**CITY OF CINCINNATI  CITY MANAGER**

c/o Clerk of Council

801 Plum Street

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

**Bill Hern**
Buildings & Inspections Department

c/o Clerk of Council

801 Plum Street

Cincinnati, Ohio 45202

(Sued in his official and individual capacities

**Kevin Rhodes**

Buildings & Inspections Department

c/o Clerk of Council

801 Plum Street

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

**Mike Fehn**

Buildings & Inspections Department

c/o Clerk of Council

801 Plum Street

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

**Sean Minihan**

Buildings & Inspections Department

c/o Clerk of Council

801 Plum Street

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

**Terry James**

Buildings & Inspections Department

c/o Clerk of Council

801 Plum Street

 Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

**David Schneider**

Buildings & Inspections Department

c/o Clerk of Council

801 Plum Street

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

**Dave Longhom**

Buildings & Inspections Department

c/o Clerk of Council

801 Plum Street

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

**Aaron Ice**

Buildings & Inspections Department

c/o Clerk of Council

801 Plum Street

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

**Other Unnamed Building Inspectors**

Buildings & Inspections Department

c/o Clerk of Council

801 Plum Street

Cincinnati, Ohio 45202

(Sued in their official and individual capacities)

**Hamilton County Commissioners**

c/o Hamilton County Clerk of Commissioners

COUNTY ADMINISTRATION BUILDING

138 East Court Street, Room 603

Cincinnati, OH 45202

**Hamilton County Land Reutlization Corporation**

3 East Fourth Street, Suite 300

Cincinnati, Ohio 45202

**Stephen Leeper**

President & CEO of Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**John F. Barrett**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Patty Basti**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in her official and individual capacities)

**Neil Bortz**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Archie Brown**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Robert H. Castellini**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Steven Davis**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Leigh Fox**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Shelly Gillis**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in her official and individual capacities)

**Mel Gravely**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Chris Habel**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Brian Hodgett**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Ryan Jankowski**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Shailesh Jejurikar**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Stephen G. Leeper**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Gary Lindgren**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Bernie Mckay**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Rodney Mcmullen**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**John Merchant**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Jill P. Meyer**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in her official and individual capacities)

**Ralph S. Michael, III**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Steve Mullinger**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Joseph A. Pichler**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Todd Schneider**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Jim Sowar**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Amy Spiller**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in her official and individual capacities)

**Jeremy Vaughn**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Warren Weber**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Thomas Williams**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**James M. Zimmerman**

Cincinnati Center City Development Corporation

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Dusty Rhode**

Hamilton County Auditor

1203 Walnut Street

Cincinnati, OH 45202

(Sued in his official and individual capacities)

**Cincinnati Center City Development Corporation**

1203 Walnut Street

Cincinnati, OH 4520

**Denise Driehaus, Hamilton County Commissioner**,

Hamilton County Land Reutlization Corporation

3 East Fourth Street, Suite 300

Cincinnati, Ohio 45202

15

(Sued in her official and individual capacities)

**Alicia Reese, Hamilton County Commissioner**,

Hamilton County Land Reutlization Corporation

3 East Fourth Street, Suite 300

Cincinnati, Ohio 45202

(Sued in her official and individual capacities)

**Stephanie Summerow Dumas, Hamilton County Commissioner**,

Hamilton County Land Reutlization Corporation

3 East Fourth Street, Suite 300

Cincinnati, Ohio 45202

(Sued in her official and individual capacities)

**Jill Schiller, Hamilton County Treasurer**

Hamilton County Land Reutlization Corporation

3 East Fourth Street, Suite 300

Cincinnati, Ohio 45202

(Sued in her official and individual capacities)

**Aftab Pureval Mayor of the City of Cincinnati**,

Hamilton County Land Reutlization Corporation

3 East Fourth Street, Suite 300

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

**Mark Quarry, Hamilton County Municipal League**,

Hamilton County Land Reutlization Corporation

3 East Fourth Street, Suite 300

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

**Tom Weidman, Hamilton County Township Association**,

Hamilton County Land Reutlization Corporation

3 East Fourth Street, Suite 300

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

**Molly North**

Hamilton County Land Reutlization Corporation

3 East Fourth Street, Suite 300

Cincinnati, Ohio 45202

(Sued in her official and individual capacities)

**COMPLAINT AND JURY DEMAND**

Plaintiffs, Akil Childress, Emma Sue Long, Charlene Berkhalder, Vanessa Sparks, Denise Hill, Stanford Poole, Sandra Allen, Omar Childress, Rodney Thompson and James McCrary, through their attorney state as follows:

## Jurisdiction

This action is brought pursuant to 42 U. S. C. §§1983 and 1988, 18 U. S. C. §§ 1962, 1964 and 1965(a), 18 U. S. C. §§ 1962, 1964 and 1965(a), 28 U. S. C. §1331 and the Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded on 28 U. S. C. §§1331 and 1341(3) and (4) and the aforementioned constitutional and statutory provisions. Additionally, the Plaintiffs invoke this Court's supplemental jurisdiction, pursuant to 28 U. S. C.§1367(a), of state causes of action included herein since they are involved in the facts, law and issues of this matter. Venue is proper in this district.

## Parties

1. Plaintiffs, Akil Childress, Emma Sue Long, Charlene Berkhalter, Omar Childress, Vanessa Sparks, Denise Hill, Stanford Poole, Sandra Allen, Rodney Thompson and James McCrary are citizens of the United States and at all times alleged herein were residents of Hamilton County, Ohio.

2. Defendant City of Cincinnati, Ohio (Hereinafter "City"},is a municipal corporation within the State of Ohio,

3. Defendants Jan-Michele Lemon Kearney, vice mayor, Victoria Parks, Anna Albi, Jeff Cramerding, Reggie Harris, Mark Jeffreys, Scotty Johnson, Meeka Owens and, Seth

Walsh are members of the Council ofthe City of Cincinnati, Ohio, (Hereinafter "Council"),

4.  Defendant Port of Greater Cincinnati Development Authority (Hereinafter "Port") is a public agency that partners with the City of Cincinnati and Hamilton County officials, along with economic development organizations, municipalities, and foundations to ensure every acre of local real estate is developed into its highest and best use. Specifically, The Port works to redevelop manufacturing and residential real estate to build the foundation of job creation and livable, revitalized communities so our residents can experience economic prosperity.

5.  Defendants Laura N. Brunner, Philip Denning, Rick Hudson, Todd Castellini, Jilson Daniels, William Fischer, and Rachel Michael, are officers and directors of Defendant Port of Greater Cincinnati Development Authority (Hereinafter "Port Officers"),

6.  Defendants Art Dahlberg, Ed Cunningham, Mike Fehn, Sean Minihan, Terry James, David Schneider, Dave Longham, Aaron Ice, and Other Unnamed Building Inspectors are officers and/or employees of Defendant City of Cincinnati Buildings and Inspections Department,

7.  Defendant Cincinnati Center City Development Corp. (3CDC) is a 501(c)(3), tax-exempt, private, non-profit corporation. Its mission and strategic focus is to strengthen the core assets of downtown by revitalizing and connecting the Central Business District and Over-the-Rhine (OTR). 3CDC was formed in July 2003, recommended by a City of Cincinnati Economic Development Task Force as part of

an overall system to increase the effectiveness and efficiency of development activities in the City of Cincinnati. Then Mayor Charlie Luken and members of the Cincinnati corporate community joined together to create 3CDC, agreeing that the economic future of Cincinnati depended first and foremost on a strong and vibrant downtown business and entertainment district. Its operations are funded privately, through a combination of corporate contributions, management fees, and below-market developer fees. In November 2004, the staff of 3CDC accepted the daily, operating responsibilities for two private investment funds, the Cincinnati New Markets Fund (CNMF) and the Cincinnati Equity Fund (CEF). These loan funds are geared toward downtown redevelopment and spurring economic development in distressed and struggling neighborhoods. 3CDC works collaboratively with the City of Cincinnati and the State of Ohio. Also among 3CDC's partners are members of the Cincinnati corporate community. Cincinnati is fortunate to have a very strong and engaged base of corporate leadership. Nearly 30 corporate leaders make up 3CDC's Board of Directors, and are vital to 3CDC's existence and success.

8. Defendants JOHN F. BARRETT  Chairman, President & CEO Western & Southern Financial Group, PATTY BASTI  Partner KPMG, NEIL BORTZ  Partner Towne Properties, ARCHIE BROWN  President & CEO First Financial Bancorp ROBERT H. CASTELLINI,  Chairman Castellini Company, STEVEN DAVIS President & CEO Cincinnati Children's Hospital Medical Center Representing Uptown Consortium, LEIGH FOX CEO Cincinnati Bell, SHELLY GILLIS Senior Vice President, CHRO & CAO American Financial Group, MEL GRAVELY  CEO

Triversity Construction, CHRIS HABEL Cincinnati Member in Charge Frost Brown Todd, RYAN HAYS EVP and Chief Innovation & Strategy Officer University of Cincinnati, BRIAN HODGETT Director, Ohio Government & Community Relations Procter & Gamble, RYAN JANKOWSKI Senior Executive, Controller GE Aviation, SHAILESH JEJURIKAR COO Procter & Gamble, STEPHEN G. LEEPER President & CEO 3CDC, GARY LINDGREN Executive Director Cincinnati Business Committee, BERNIE MCKAY President & CEO Haile Foundation, RODNEY MCMULLEN President & CEO The Kroger Company, JOHN MERCHANT Partner Dinsmore & Shohl, LLP, JILL P. MEYER President & CEO Cincinnati USA Regional Chamber, RALPH S. MICHAEL, III (VICE CHAIRMAN) President & CEO Fifth Third Bank, Cincinnati, STEVE MULLINGER Regional President Huntington Bank, JOSEPH A. PICHLER (VICE CHAIRMAN) Retired Chairman & CEO The Kroger Company, TODD SCHNEIDER President & CEO Cintas Corporation, JIM SOWAR Cincinnati Managing Partner Deloitte & Touche LLP Executive Committee Member Governance & HR Committee Member Audit Committee Member Development & Finance Committee Member Asset Committee Member Event and Sponsorship Committee Member Center City Management Committee Member 3CDC, AMY SPILLER State President, OH & KY Duke Energy Ohio & Duke Energy Kentucky, JEREMY VAUGHN Cincinnati Managing Partner Ernst & Young, WARREN WEBER President Ohio/Northern Kentucky PNC Bank, THOMAS WILLIAMS President North American Properties, JAMES M. ZIMMERMAN Retired Chairman & CEO Macy's, are Members of the Board of 3CDC,

9. Defendant Hamilton County Land Reutilization Corporation was established under Division (A) of Section 5722.02 of the ORC which authorizes a county to elect to adopt and implement the procedures set forth in 5722.02 to 5722.15 of the ORC to facilitate the effective reutilization of nonproductive land situation within its boundaries, and division (A) of Section 1724.04 of the ORC authorizes a County that has a population of more than sixty thousand as of the most recent decennial census and that elects to adopt and implement the procedures set forth in 5722.02 to 5722.15 of the ORC to organize a county land reutilization corporation for the purpose of exercising the powers granted to a county under Chapter 5722 of the ORCC. A resolution requesting the Hamilton County Treasurer to file initial Articles of Incorporation to enable the formation of the Hamilton County Land Reutilization Corporation in accordance with Ohio Revised Code Section 5722.02 and naming a board of directors adopted at a regularly adjourned meeting of the Defendant Board of County Commissioners of Hamilton County, Ohio, the 13th day of July, 2011 - Commissioners Minutes Volume 323, July 13, 2011, Item 1, Images 58-60.

10. Defendants Denise Driehaus, Hamilton County Commissioner, Alicia Reese, Hamilton County Commissioner, Stephanie Summerow Dumas, Hamilton County Commissioner, Jill Schiller, Hamilton County Treasurer, Aftab Pureval Mayor of the City of Cincinnati, Mark Quarry, Hamilton County Municipal League, Tom Weidman, Hamilton County Township Association, and, Molly North, are members of the Board of Defendant Hamilton County Land Reutilization Corporation,

11. Defendant Dusty Rhode is the Hamilton County Auditor,

**Facts**

**BACKGROUND**

12. Plaintiffs repeat paragraphs 1 through 12 as if fully re-written herein,

13. The Over-The-Rhine and Mt. Auburn communities of the City of Cincinnati have historically been predominantly the residences of African-American citizens,

14. Until 2018 properties in these areas of the City were occasionally cited for building code violations but such violations were not pursued,

15. Although Potemkin-style initiatives for re-vitalizing these neighborhoods were periodically announced, these largely African-American communities were neglected by the City,

16. The City of Cincinnati has a history of driving African-American residents from their homes, businesses, schools and social networks in the name of re-development such as its wholesale destruction of the Kenyon-Barr neighborhood which was overwhelmingly African-American and at the time constituted a fourth of the population of the City,

17. Beginning in 2021 and continuing to the present date, Defendant Port has operated under a plan to purchase a portfolio of vacant and foreclosed homes in the City of Cincinnati and within the area of the city delineated in this Complaint,

18. Defendant Port sold bonds to acquire this portfolio,

19. Defendant Port, through its staff, has declared that ":..it's easier to fix up empty houses…",

20. Defendant 3CDC has developed the plans for the downtown business district, including the area delineated in this Complaint and has driven up property values and tax increases in this area,

21. Defendant 3CDC is a receiver for the properties in this area,

22. Defendant 3CDC utilizes Defendant Port as a strawman owner in a scheme to remove properties from the county real estate tax roll and to transfer properties to Defendant Port for re-sale to private developers at far below market prices,

23. Examples of this tactic in the scheme involving #CDC and the Port are the Whex Garage, Sax Fith Avenue and Macy's real estate purchases and transfers and, the public and private development plans for these buildings purchase,

24. These tactics and schemes were published on August 25, 2023 by businessman Jeffrey J. McClorey and brought to the attention of Defendants Port, 3CDC, City and Council and the named defendants from these entities,

25. The City began negotiations with FC Cincinnati for the construction of a soccer stadium in late 2016,

26. On or about February 8, 2017, the Auburn Avenue Corridor Strategic Development Plan was presented with the participation of Defendants City, City Council, and City Planning Commission,

27. A map included in this document clearly includes the Over-The-Rhine and Mt. Auburn areas of the City of Cincinnati,

28. On page 11 of this document, there is what is labeled as a "Big Idea" to "Identify and solicit development interests for possible redevelopment opportunities", and, "Promote continued success of The Christ Hospital…" a private institution,

29. Page 32 of this document is labeled "Big Ideas" and is directed to private real estate developers and brokers and is intended to "Solicit appropriate tenant prospects…"

30. The Department of Buildings and Inspections has had police powers since a collaborative agreement in 2003,

31. This Auburn Avenue Corridor Strategic Development Plan was developed from "A review of the City of Cincinnati Department of Building and Inspections records" targeting single-family homes that the City had ordered vacant due to code violations, page 28,

32. The neighborhoods included in the map accompanying the Auburn Avenue Corridor Strategic Development Plan are located between and adjoin the locations of the soccer stadium and Christ Hospital (referenced and a key consideration in the Plan),

33. In or about November, 2017, Hamilton County and the City of Cincinnati provided $51,000,000.00 of taxpayer money to aid in the construction of a stadium,

34. On February 23, 2018, on the letterhead of the City of Cincinnati Council, a public hearing notice of the Economic Growth and Zoning Committee for the amending of the official zoning map in the West End area of the city from Manufacturing General, Residential Multi-family and Residential Mixed, to Urban Mix, which would permit the construction and use of entertainment facilities and bars and, large outdoor sites (with zoning commission approval),

35. Urban Mix contains no parking restrictions,

36. The public hearing was scheduled for March 20, 2018,

37. The Economic Growth and Zoning Committee prepared a document for this meeting under the logo of the City of Cincinnati,

38. This document touted its consistency with Plan Cincinnati, providing page numbers from Plan Cincinnati as references, and stated that:

"Cincinnati will analyze and respond to neighborhood deterioration through targeted rehabilitation, modernization, or demolition" (pg. 160)

"Improve the quality and number of moderate to high-income rental and homeowner units' (pg. 165),

39. The re-zoning was codified into Ordinance 54-2018 on the following day, March 21, 2018,

40. FC Cincinnati intended and intends and is utilizing public funds and tax abatements to privately develop the area adjoining its newly constructed stadium,

41. To facilitate its gentrification of the area adjoining its newly constructed stadium, FC Cincinnati orally and by the terms of its purchases encouraged both overtly and covertly the removal of minority and low-income residents and businesses, including the present Plaintiffs, from its proposed publicly funded development area for the purpose of private profits,

42. Defendants City of Cincinnati, Hamilton County and The Port Authority were aware of the discriminatory actions of FC Cincinnati and ratified the continuing activities of FC Cincinnati, including the selective enforcement of parking allocations and building code violations in thearea around the stadium,

43. The stadium was opposed by community groups such as Coalition Against an FC Cincinnati Stadium, who also objected to the spending of tax monies in the amount of $33,000,000.00 for infrastructure changes in the surrounding neighborhoods,

44. The City passed the measure to aid in the financing of the stadium as an emergency measure thereby precluding a citizen-requested ballot question for City voters as proposed by attorney Timothy Mara,

45. Since at least 2017 the Defendant City and its Building and Inspections Department have pursued a program of predatory initiation of building code complaints against African-American residents in the area of the City delineated in this Complaint,

46. Beginning in 2017 the City of Cincinnati and its Department of Buildings and Inspections began aggressively and without community complaints, targeting African-American owned buildings in the area between Christ Hospital and the soccer stadium for escalating code violations after years of neglect,

47. A tactic used by the City and its Buildings and Inspections Department through its Defendant inspectors is to declare a building vacant, require a Vacant Building License which can only be obtained after repairs have been completed, run-up fines and then take possession of the building for re-sale to a developer at a far below market price,

48. Defendant City was sued in case number 1:20-cv-581 for the racially discriminatory impact of its tax abatement policy,

49. Paragraph 34 of the Complaint in case number 1:20-cv-581 alleged that the City had informed itself of the segregated and racially discriminatory practices in its housing and taxation policies,

50. Defendant City settled the lawsuit in case no. 1:20-cv-581 in February, 2024,

51. Defendants City, Mayor, Council Members (Individually named and served), Building inspectors (individually named and served), Hamilton County Commissioners, Hamilton County Land Reutilization Corporation, Cincinnati Center City Development Corporation and the Hamilton County Auditor Dusty Rhodes were

all sued in Case No. 1:20-cv-713 and put on notice with this complaint and its accompanying documents of the practices alleged in this present complaint,

52. Case No. 1:20-cv-713 was dismissed without prejudice,

53. Defendants Hamilton County Land Reutilization Corporation and the City of Cincinnati were also put on notice of the predatory practices in the foreclosure and sale of African-American properties by the Complaint of current Plaintiff Denise Hill, a disabled African-American woman, in case no. 1:18-cv-522,

54. The Macy Building in downtown Cincinnati sat vacant for 15 years without any vacant building requirements,

55. On January 22, 2022, Defendant City Council, including Defendant Mayor and Council Members approved a 25 year tax exemption for the development of the Macy Building apartments whose rentals would start at 80% to 120% of area median income,

56. Area Median Income is not defined,

57. Defendant Port Authority has utilized a tactic of City expedited tax foreclosures to acquire properties owned by African-American residents in the area delineated in this complaint,

58. The Sax Fifth Avenue Building went vacant in 2022 without any vacant building requirements but was purchased by the City for $3,000,000.00 and then sold to Defendant Port Authority for $1.00, after a vote ratifying this agreement was taken by the City Council,

59. The City of Cincinnati through its Buildings and Inspection Department and utilizing the Law Department began exponentially and selectively applying fines to African-

American building and homeowners in the area between Christ Hospital and the soccer stadium,

60. The City systematically prosecuted African-American building and homeowners, jailing some and arbitrarily pursuing public nuisance designations,

61. The City and the Defendant Port Authority utilized these tactics to seize properties with rising property values and to appoint receivers to sell the seized properties to developers,

62. All Plaintiffs herein received dozens of unsolicited and aggressive offers from real estate developers to purchase their properties immediately after each code violation citation,

63. Plaintiffs were informed by these developers that they had obtained their names and property addresses from the records of the Department of Buildings and Inspections,

64. The predatory building code practices and discriminatory taxation practices alleged against all defendants herein and of which all defendants have been given actual notice, have continued unabated,

**INDIVIDUAL PLAINTIFFS**

65. Plaintiffs repeat paragraphs 1 through 39 as if fully re-written herein,

**Akil Childress**

66. Plaintiff was doing renovations on his property located at

67. Plaintiff had paid his property taxes,

68. In 2018 Plaintiff removed his porch due to its condition

69. Plaintiff received no further notices concerning his property,

70. On February 12, 2024 the City received permission to demolish his property,

71. Plaintiff received no notice of this action,

72. The City demolished his property on February 14, 2024,

73. The real property was valued at $16,440.00, personal property lost included two vintage automobiles, a 1965 Mustang convertible and a 1987 Jetta, furniture, tools, photography equipment and a food grill for a total exceeding $60,000.00,

**Sandra Allen**

74. Plaintiff repeats paragraphs 1 through 48 as if fully re-written herein,

75. Plaintiff owns three properties in the area designated in this Complaint,

76. She has been cited by the City for nuisance conditions in these buildings but has been attempting to comply with the City and the Department of Buildings and inspections,

77. On or about October 15, 2023, Plaintiff, her son and her attorney accompanied inspector in an inspection of her three buildings,

78. These buildings are directly across the street from multi-unit buildings that have been developed by commercial developers and have thus raised the property values in this formerly African-American area,

79. Counsel for Plaintiff was informed that the City will move for a receiver to take and sell this property without input from Plaintiff,

80. The City sells these properties below market value, leaving nothing for the property owner,

81. At the October 3, 2023 inspection an attorney for the City was heard to urge Plaintiff to sell these buildings, including one not designated as a nuisance and nearly completed, to a developer,

82. Schilling for a private developer is not a part of the duties of an employee of the Law Department,

**Emma Sue Long**

83. Plaintiff repeats paragraphs 1 through 57 as if fully re-written herein,

84. Plaintiff owns properties located at 1801 Baymiller Street and 904 Findley Street, Cincinnati, Ohio and located in the areas designated in this Complaint,

85. Inspector Kevin Rhodes has entered her buildings without permission and contrary to law and the policy of his Department,

86. Inspector Rhodes has trespassed on other properties in the area described herein, e.g. 104 Valencia Street,

87. Plaintiff paid for a vacant building license and was making repairs to her buildings,

88. Plaintiff has been paying taxes and insurance on her buildings

89. The Findley Street property was torn down by the City in October, 2023,

90. 1801 Baymiller has been boarded up and locked denying Plaintiff access to these buildings,

91. Notices have not been sent to Plaintiff but to an Alexis Kidd at a neighborhood organization,

**Charlene Berkhalter**

92. Plaintiff repeats paragraphs 1 through 69 as if fully re-written herein,

93. Plaintiff owns the property located at 8342 Woodbine Avenue, Cincinnati, Ohio,

94. Plaintiff has paid over $20,000.00 for repairs to this building,

95. The property has been deemed a vacant building,

96. Plaintiff has continually paid all fines requested by the City, the most recent being for over $1,800.00 in February, 2024,

97. Plaintiff was contacted by a City employee who offered her $2,000.00 for her property,

**Stanford Poole**

98. Plaintiff repeats paragraphs 1 through 75 as if fully re-written herein,

99. Plaintiff owns the properties located at 2143 and 2160 Rice Street, Cincinnati, Ohio,

100. Defendant Dave Longhom had previously attempted to cut-off water to 2160 Rice Street,

101. Longhom's actions were the result of Plaintiff Poole helping a neighbor who had inspection problems,

102. As recently as December 12, 2023 Plaintiff has received notice of code violations on this property from Defendant Art Dahlberg,

103. In this letter, Dahlberg references Defendant Inspector Bill Hern and states that violations such as cornice repair, siding repair and painting were required were discovered "during a recent inspection" of this property,

104. No notice of an inspection was given nor the circumstances prompting an impromptu inspection,

105. Defendant Aaron Ice trespassed on the property located at 2143 Rice Street,

106. Under the direction of Defendant Dahlberg, the side of the building located at 2143 Rice Street was destroyed,

107. Plaintiff Poole repeatedly demanded compensation but has never received such,

108.    Plaintiff has been subject to these escalating impromptu inspections and has been

incarcerated as a result,

**Vanessa Sparks**

109.    Plaintiff repeats paragraphs 1 through 82 as if fully re-written herein,

110.    Plaintiff owned properties at 239 Renner Street, 2232 Harrison Avenue and 421

West McMicken Avenue,

111.    Plaintiff was evicted from her property at 421 McMicken Avenue on April 22,

2015,

112.    Plaintiff's personal property was seized to pay for delinquent taxes,

113.    The building had been declared vacant although Plaintiff had notified the

Department of Buildings and Inspections several times that the building was occupied

and that water, electric and mail were present in the property,

114.    Defendants Mike Fehn who was armed and Defendant Art Dahlberg, who had

been notified of the occupancy of the building, conducted the foreclosure and

eviction,

115.    The seizure was premised on false and recklessly inaccurate allegations by

Defendants Mike Fehn, Terry James and Ed Cunningham,

116.    This property has stood vacant after the eviction of the Plaintiff and the new

Caucasian owners have not been fined or coerced concerning the vacancy of this

building,

117.    When Plaintiff attempted to get records concerning her property from the

Department of Buildings and Inspections on August 12, 2021, but was denied access

to these records,

118.   Plaintiff communicated this denial to the Defendant Mayor and the Defendant members of the Council on February 28, 2022,

119.   Plaintiff has received no response to the present date,

120.   This building remains vacant as of January 24, 2024,

**James McCrary**

121.   Plaintiff repeats paragraphs 1 through 93 as if fully re-written herein,

122.   Plaintiff is an elderly African-American man

123.   Plaintiff owns the properties located at 3676, 3680, 3682 and 3684 Vine Street,

124.   Notices of code violations were consistently mailed by the City of Cincinnati to an incorrect address,

125.   Plaintiff has attempted contact with the Defendant City but has had his personal property seized from these addresses and has been constantly ordered into court and fined,

126.   Currently Plaintiff has been charged with an amount exceeding $13,000.00 for clean-up on 3684 Vine Street,

127.   Plaintiff received no notice concerning this matter until he recently paid his taxes on 3686 and 3682 Vine Street but was not permitted to pay his taxes on 3684 Vine Street,

**Omar Childress**

128.   Plaintiff is an elderly African-American man,

129.   Plaintiff owns the properties located at 775 Clinton Springs Drive and 462 and 454 Whiteman Street,

130. Defendant City demolished Plaintiff's fence at 454 Whiteman Street which was used to protect personal property involved in Plaintiff's business,

131. Defendant Cunningham had illegally ordered Defendants Minihan and Schneider to cut-off electricity to Plaintiff's Whiteman properties,

132. Plaintiff was incarcerated as a result of his complaints on this matter,

133. Plaintiff has continually received notices of code violations and increasing taxes and has attempted to complete repairs even offering a repair plan to the City,

134. Harassment continues,

135. Plaintiff has received over 40 cards from developers to sell his properties,

**Denise Hill**

136. Plaintiff repeats paragraphs 1 through 118 as if fully re-written herein,

137. Plaintiff's property located in the area delineated in this complaint was included in her bankruptcy estate and then purchased by her attorney who became the Hamilton County Treasurer,

**Rodney Thompson**

138. Plaintiff repeats paragraphs 1 through 137 as if fully re-written herein,

139. Plaintiff owned six buildings; three in Evanston, one in Mt. Auburn, one in Avondale and one in Walnut Hills,

140. Defendant City pursued these buildings as public nuisances,

141. Although the Defendant City possessed Plaintiff's address, no notice of violations or of the demolishing of his buildings were sent to him,

142. The only notices of demolition were papers attached to the buildings,

143.    Plaintiff was told by Defendant Ed Cunningham that "We are coming after your buildings".

144.    These buildings were demolished by the City,

145.    Plaintiff emailed his complaints and observations of what alleged was an unethical process to the Defendants Council members on June 13, 2022,

**First. Cause of Action: Deprivation of Equal Protection**

146.    Plaintiff repeats paragraphs 1 through 145 as if fully re-written herein

147.    No person may be discriminated against on the basis race, color, national origin, religion, or sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity funded in whole or in part with Federal financial assistance. 42 U.S. C. §5302, 24 CFR Part 6, and such actions are violative of the Equal Protection Clause,

148.    Defendant City of Cincinnati has received federal financial assistance under the American Rescue Plan Act.  The American Rescue Plan Act provided $67.5 million in one-time emergency funding to the City. These resources will be used to reimburse COVID-19 related expenses *or as revenue replacement*, pending guidance from the U.S. Department of the Treasury (2022-2023 approved budget, City of Cincinnati) (Emphasis added) and, "Balancing the projected deficit of $73.4 million in the Approved FY 2021 General Fund Budget Update required $32.5 million of expenditure reductions many of which were one-time reductions. Vacant positions were eliminated, position vacancy savings was sharply increased*, leveraged support was shifted to Federal entitlement funds*, costs were shifted to various Restricted Funds where eligible, an Early Retirement Incentive Program (ERIP) was

implemented, COLAs and merit pay were frozen for non-represented employees, Police and Fire Recruit classes were delayed until FY 2022, and other miscellaneous reductions were taken in various line items" (2022-2023 approved budget, City of Cincinnati) (Emphasis added),

149.    Defendant Port receives funding from Defendant City,

150.    Defendant City of Cincinnati and The Port Authority engaged in and were aware of the predatory and discriminatory actions of named Defendants from the Department of Buildings and Inspections and ratified these actions through their refusal to take corrective action although on notice of said predatory and targeted citations of African-American property owners while giving favorable treatment to Caucasian and corporate building owners,

151.    Wherefore, the named Defendants City, Council, Port and Port Officers, and named Buildings and Inspection defendants have violated the civil rights of the Plaintiffs, who are members of protected classes under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

152.    The Plaintiffs demand that the Court enjoin Defendants City, Council, Port and Port Officers, 3CDC who utilize federal funding, from and/or order the named Defendants under this Cause of Action to joint and severally pay actual damages in the amount of $4,200,000.00 and $10,000,000.00 in punitive damages,

### Second Cause of Action: Deprivation of Property Rights Without Just Compensation or Due Process of Law

153.    Plaintiffs repeat the allegations in paragraphs 1 through 152 of this Complaint as if fully re-written herein,

154.    The Fifth Amendment to the United States Constitution states in pertinent part,

**No person shall …**be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." The Fifth Amendment has been made applicable to the States under the Fourteenth Amendment to the United States Constitution,

155. In addition to their ownership interest, Plaintiffs have  property rights in their tenancy; *See Alamo Land & Cattle Co. v. Arizona*, 424 U.S. 295, 303 (1976) ("It has long been established that the holder of an unexpired leasehold interest in land is entitled, under the Fifth Amendment, to just compensation for the value of that interest when it is taken upon condemnation by the United States."); A. *W. Duckett & Co. v. United States*, 266 U.S. 149, 151 (1924) (holding that the government was required to compensate a lessee who had a leasehold in the condemned property); *In re Ames Dep't Stores,* Inc. 287 B.R. 112, 120 (Bankr. S.D.N.Y. 2002) ("[T]he Supreme Court has recognized the basic economic point, and ruled as a consequence that a tenant's interest in the economic value of a lease is property capable of being protected under the Fifth Amendment to the Constitution.")

156. Plaintiffs still retain a possessory interest in the properties located at, Cincinnati, Ohio 452,

157. Plaintiffs have not received compensation, just or otherwise from the Defendants City, Council, Port or Port Officers,

158. Plaintiffs have demanded compensation for their properties on multiple occasions continuing to the present date,

159. Wherefore, The Plaintiffs demand that the Court enjoin Defendants City, Council, Port and Port Officers and 3CDC who utilize federal funding from the eviction of the

Plaintiffs and make reasonable compensation to the Plaintiffs for the properties illegally taken,

**Third Cause of Action: Conspiracy to Violate Civil Rights;**

160.     Plaintiffs repeat the allegations in paragraphs 1 through 159 of this Complaint as if fully re-written herein,

161.     Defendants City, Council, Port, Port Officers, agreed overtly and by acquiescence to deprive the Plaintiffs of their civil rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and have agreed overtly to take the private property, to wit, the described real estate and have taken the overt actions described specifically in the Complaint,

162.     Defendants named under this Cause of Action have proceeded intentionally and recklessly to promote discriminatory regulations resulting in aggressive and predatory actions by their agents in the Buildings and Inspections Department in proactively targeting African-American building owners in the area of the City delineated in this Complaint and as outlined in this Complaint,

163.     The Plaintiffs demand that the Court enjoin Defendants City, Council, Port and Port Officers, 3CDC and Land Reutilization who utilize federal funding, from the eviction of the Plaintiffs and/or order the named Defendants under this Cause of Action to pay damages in the amount of $4,200 ,000.00 to compensate for their loss of property and punitive damages in the amount of ten million dollars ($10,000,000.00), from Port, 3CDC and Land Reutilization

**Fourth Cause of Action: Civil Conspiracy;**

164.   The Plaintiffs repeat the allegations contained in paragraphs 1 through 161 of this Complaint as if fully re-written herein,

165.   Defendants City, Council, 3CDC, Land Reutilization met in scheduled meetings in public, as alleged herein, or in private session have agreed to pursue the discriminatory and predatory practices delineated specifically in this Complaint and took the overt actions described herein against the Plaintiffs named herein,

166.   All of the Defendants maliciously combined and agreed as enunciated above to deprive the Plaintiffs of their real and personal property as described hereinbefore and proceeded intentionally and recklessly to promote and publish discriminatory regulations resulting in aggressive and predatory actions by their agents in the Buildings and Inspections Department in proactively targeting African-American building owners in the area of the City delineated in this Complaint and as outlined in this Complaint,causing them to lose said property by committing the overt acts of concealment, fraudulent court filings, and predatory, discriminatory and targeted code citations against African-American building owners,

167.   The Plaintiffs demand that the Court enjoin Defendants City, Council, Port and Port Officers, 3CDC and Land Reutilization who utilize federal funding, from the eviction of the Plaintiffs and/or order the named Defendants under this Cause of Action to pay damages in the amount of $4,200 ,000.00 to compensate for their loss of property and punitive damages in the amount of ten million dollars ($10,000,000.00), from Port, 3CDC and Land Reutilization

**Fifth Cause of Action: Extortion**

168.   Plaintiffs repeat paragraphs 1 through 167 as if fully re-written herein,

169.     Under Ohio Revised Code Section 2307.60, a civil action will lie for criminal acts even without a criminal conviction, *Buddenberg v.Weisdack, 2022-Ohio-3832,*

170.     The Defendant City has used the threat of legal action and the filing of legal actions to force the sale of Plaintiffs' properties to private real estate developers, and has through its agents encouraged these predatory sales to private real estate developers as per its written development plans,

171.      As a result of the Defendant City's and Council's  actions, and those of their agents named herein, Plaintiffs have lost their properties both real and personal and have had their reputations damaged,


172.     The Defendants referenced in this Cause of Action have repeatedly violated the provisions of ORC 2905.11,

173.    The Plaintiffs demand that the Court enjoin Defendants City, Council, Port and Port Officers, 3CDC and Land Reutilization who utilize federal funding, from the eviction of the Plaintiffs and/or order the named Defendants under this Cause of Action to pay damages in the amount of $4,200,000.00 to compensate for their loss of property and punitive damages in the amount of ten million dollars ($10,000,000.00), from 3CDC and Land Reutilization

## Seventh Cause of Action: Civil Rico

174.    Plaintiffs repeat paragraphs 1 through 173 as if fully rewritten herein,

175.    Defendants City, Counci, Port, 3CDC and Land Re-utilization have solicited and received funds from the federal and state governments and from multi-state investors and organizations to fund and activate their illegal activities,

176.    Defendants City, Port, 3CDC, Land Re-utilization and their named agents have engaged in a systematic and overtly ratified practice of extortion, abuse of process, illegal incarceration and discrimination against the multiple Plaintiffs named herein,

177.    The Plaintiffs demand that the Court enjoin Defendants City, Council, Port and Port Officers, 3CDC and Land Reutilization who utilize federal funding, from the eviction of the Plaintiffs and/or order the named Defendants under this Cause of Action to pay treble damages in the amount of $13,200,000.00 to compensate for their loss of property and punitive damages in the amount of ten million dollars ($10,000,000.00), from Port, 3CDC and Land Reutilization

### Prayer for Relief

178.    The Plaintiffs demand that the Court enjoin Defendants City, Council, Port and Port Officers, 3CDC and Land Reutilization who utilize federal funding, from the eviction of the Plaintiffs and/or order the named Defendants be held jointly and severally liable to pay actual damages in the amount of $4,200,000..00; treble damages in the amount of $13,200,000.00 to compensate for their loss of property and award punitive damages in the amount of ten million dollars ($10,000,000.00), from 3CDC and Land Reutilization and other named defendants.

**Certification and Closing Under Federal Rule of Civil Procedure 11,**

By signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing

existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted,

s/ George A. Katchmer

Attorney at Law (0005031)

1886 Brock Road N. E.

Bloomingburg, Ohio 43106

(740) 437-6071

(740) 437-6071 Facsimile

Attorney for Plaintiffs